# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:

**Kenny K Specht** and **Emma Camille Specht**,

Debtors,

No. 13-27566-LMI

Chapter 11

## Motion for Appointment of Chapter 11 Trustee

### Request for Expedited Relief

Pursuant to 11 U.S.C. § 1104(a), O.A. "Robert" Madison, as trustee of the Hoffmaster/Lucier Trust (the "Trust"), a creditor in this chapter 11 case, moves this court to appointment a chapter 11 trustee for cause. As established in pre-petition contested litigation, the debtor Kenny K. Specht, acting in a fiduciary capacity, fraudulently and systematically stole well over $1.1 million from the Trust. The Court found co-Debtor Emma Camille Specht likewise responsible both for compensatory and punitive damages. The Debtors cannot be trusted to act as fiduciaries for their creditors.

This motion is supported by the attached memorandum of points and authorities.

## FACTS AND MEMORANDUM

### Factual Background.

Virginia B. Hoffmaster and Roland G. Lucier established the Trust on December 4, 1987. They amended the Trust four times before it became irrevocable upon the death of Virginia B. Hoffmaster on March 4, 2011. As amended, the Trust named O. A. "Robert" Madison and Ken Specht as Successor Co-Trustees. There are ten beneficiaries of the Trust. Pursuant to the terms of the Trust as amended, upon the death of the Virginia Hoffmaster, the tangible property was to be distributed as directed and then "the remaining principal of the Trust Estate, including any

undistributed net income and subsequent additions thereto, shall be distributed" to the beneficiaries.

At the time of Virginia B. Hoffmaster's death, Mr. Specht's suggested the co-Trustees hire Mark Beck, as their agent to perform certain trustee's duties. Mark Beck was married to the ex-wife of Mr. Specht's son who is the mother of Mr. Specht's grandson. Mr. Beck and Mr. Specht acted together to consolidate the Trust's assets from various financial institutions.

Thereafter, Mr. Specht, working in concert with Mark Beck, grossly abused his position as trustee and stole approximately $1.1 million from the Trust. These are not mere allegations. On February 14, 2013, a judge of the Arizona Superior Court made binding findings of fact and conclusions (the "Findings") of law against Mr. and Mrs. Specht in the case of In the Matter of the Hoffman/Lucier Trust, Maricopa County cause no. PB2012-001618 (the "Litigation"). The Findings are attached hereto as **Exhibit A**. Based on the Findings, on March 15, 2013, the judge presiding over the Litigation entered a judgment against the Debtors, Mr. and Mrs. Specht, awarding the Trust $1,026,812.37 in compensatory damages and a like amount for punitive damages, plus fees and costs (the "Judgment")[1] A copy of the Judgment is attached hereto as **Exhibit B**.

The Findings are quite detailed and will not be restated verbatim in this motion. The court in the Litigation went into great detail describing Mr. Specht's breach of fiduciary duties including misappropriation of Trust Funds of more than a million dollars. This court is encouraged to review the Findings. However, the following Findings are quite telling:

> As a Co-Trustee and as an agent for the Trust, Mr. Specht and Mr. Beck were fiduciaries and owed fiduciary duties to both the Trust and the beneficiaries.

---

[1] The Debtors scheduled the Trust as an unsecured creditor with a claim of $1,026,812.37. That amount is only the compensatory damage portion of the Judgment. The court also awarded the Trust punitive damages of $1,026,812.37, plus fees and costs, for a total of $2,123,450.44.

Neither Mr. Beck nor Mr. Specht exercised reasonable care in administering the trust. Furthermore, the Respondents did not act "impartially" and did not act in the best interests of the beneficiaries. Mr. Specht and Mr. Beck each had complete access and control over the Wells Fargo Bank accounts (complete with check/debit cards for each of them) and the Court finds it was Mr. Specht and Mr. Beck who took the entire $1,026,812.37 that was not distributed to the beneficiaries or spent on legitimate Trust expenses. **Mr. Specht and Mr. Beck breached their duties by acting in concert to convert $1,026,812.37 in Trust assets. Respondents' took that money while they were serving as fiduciaries and their conduct was intentional, knowing, and undertaken with a conscious and deliberate disregard for the Trust and the beneficiaries whose interest they were legally obligated to serve and protect.**

Trustees also have a duty to keep the beneficiaries informed.  .  .  **The Respondents did not keep the beneficiaries informed about the administration of the trust and continually refused to provide information to the beneficiaries despite repeated requests.**

**Mr. Beck's and Mr. Specht's conduct was reprehensible and their actions completely depleted the trust.** Their complete disregard for the beneficiaries started within days of the death of the settlor and continued throughout their alleged administration of the trust.  .  .  . **The Respondents used money that belonged to the beneficiaries for their own personal expenses and pleasure. Given the scope of Respondents' misconduct, spanning more than 16 months and hundreds of separate transactions, and the fact that they were fiduciaries who were obligated to protect the interests of those they took advantage of, an award of punitive damages is appropriate.** Simply ordering Respondents to replace the money they took from the Trust would leave Respondents in the same position they were in before they took the money they were obligated to protect and distribute. Such a result would do nothing to punish Respondents or deter others from engaging in similar misconduct in the future. An award equal to the amount the Respondents took, $1,026,812.37, in punitive damages is appropriate and hereby ordered.

*See* Findings, pgs 9 & 11 (emphasis supplied).  Following entry of the Judgment, the Trust domesticated the judgment in Florida.  A copy of the Notice of Recording of Foreign Judgment filed on April 30, 2013, is attached hereto as **Exhibit C**.

Following recordation of the foreign judgment in early July, 2013, the Trust began discovery and collection proceedings.  Rather than respond to discovery or comply with writs of execution, the Debtors filed this bankruptcy proceeding on July 25, 2013.

3

**Legal Argument.**

A debtor-in-possession is supposed to be a fiduciary. *In re Suncruz Casinos, LLC,* 298 B.R. 821, 829 (Bankr.S.D.Fla.2003). He performs the duties of a trustee. 11 U.S.C. § 1107. The Debtors in this case are not qualified to be fiduciaries. While serving as a trustee, Mr. Specht stole money from the Trust.

At the request of a party in interest, the court "shall" appoint a trustee in the following situations:

> **(1) for cause, including fraud, dishonesty,** incompetence, or gross mismanagement of the affairs of the debtor by current management, **either before or after the commencement of the case,** or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> **(2) if such appointment is in the interests of creditors,** any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104 (emphasis supplied).

Although there is a presumption that the debtor-in-possession should be permitted to remain in control, "[I]n the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Matter of Intercat, Inc.,* 247 B.R. 911, 920 (Bankr.S.D.Ga.2000). This is an appropriate case. The Debtors are thieves, as reflected in the Findings about Mr. Specht and the Judgment against both Debtors.

The court may consider both prepetition and postpetition conduct in determining whether there is cause to appoint a trustee. *In re Microwave Prods. of Am., Inc.,* 102 B.R. 666, 671 (Bankr.W.D.Tenn.1989). Ordinarily, an evidentiary hearing would be necessary to determine

4

cause. *In re Microwave*, 102 B.R. at 670. However, in this case, an evidentiary hearing has already been held. Barely six months ago, as set forth in the Findings, a court determined that Mr. Specht, while acting in a fiduciary capacity, converted more than a million dollars from the Trust. The court found his conduct so reprehensible that it awarded punitive damages equal to the compensatory damages against both Debtors. Surely, such findings rise to the level of cause; the Debtors are bound by the Findings. Cf. *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981) (In concluding that collateral estoppel applies in bankruptcy dischargeability determinations, the court held that, although "Congress intended the bankruptcy court to determine the final result" it "does not require the bankruptcy court to redetermine all the underlying facts.").

Because cause exists, the Court must appoint a trustee. *In re Suncruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr.S.D.Fla.2003) ("Once the court finds that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed.")[2]

The Trust seeks expedited relief as now that the Debtors have filed their schedules and disclosed their alleged assets (which includes business operations and substantial cash), it is critical that a Chapter 11 Trustee take control of the assets, perform an accounting and safeguard whatever value exits for the benefit of creditors.

WHEREFORE, O.A. "Robert" Madison, as Trustee of the Hoffmaster/Lucier Trust respectfully requests that this Court grant its motion to appoint a Chapter 11 Trustee and such other and further relief this Court deems appropriate.

---

[2] The Trust reserves the right to seek dismissal and/or conversion after it has performed discovery which has been delayed due to Debtors' counsels schedule.

Dated this 3rd day of September, 2013.

Respectfully submitted,

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Attorneys for Creditor,*
  *Hoffmaster/Lucier Trust*
1776 North Pine Island Road, Suite 309
Fort Lauderdale, Florida 33322
Telephone:    (954) 523-0900
Facsimile:    (954) 915-9016
E-mail:tabrams@tabramslaw.com

By:     /s/Thomas L. Abrams
          THOMAS L. ABRAMS, ESQUIRE
          Florida Bar No. 764329

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF and served this 3rd day of September, 2013, *via CM/ECF Electronic Filing, and/or first-class U.S. Mail, as noted, to all parties on the attached Service List:*

By:     /s/Thomas L. Abrams
          THOMAS L. ABRAMS, ESQUIRE

## SERVICE  LIST

**_Notice/Service via ECF  Electronic Mail:_**

The following is the list of **parties** who are currently on the list to receive e-mail notice/service via CM/ECF for this case:

Demetrios C Kirkiles - kirkileslaw@bellsouth.net, dkirkiles@bellsouth.net

Office of the US Trustee - USTPRegion21.MM.ECF@usdoj.gov

**_Notice/Service via Regular First Class U.S. Mail:_**

Kenny K. Specht
6925 SW 147th Street
Miami, FL 33158

Emma Camille Specht
6925 SW 147th Street
Miami, FL 33158

Demetrios C. Kiekiles, Esq.
1619 S Andrews Ave
Ft. Lauderdale, FL 33316

Earl A. Wald
Wald and Cohen PA
11420 N Kendall Dr #203
Miami, FL 333176

Robert L Gardana
12350 SW 132 Ct  #204
Miami, FL 33186

Daimler Trust
c/o BK Servicing LLC
PO Box 131265
Roseville, MN 55113-0011

George Richard
National Auction Company
1325 S Congress Ave #202
Boynton Beach, FL 33426

By:    /s/Thomas L. Abrams
                THOMAS L. ABRAMS, ESQUIRE

Michael K. Jeanes, Clerk of Court
*** Filed ***
02/19/2013 8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

PB 2012-001618                                        02/14/2013


                                            CLERK OF THE COURT
COMMISSIONER LORI HORN BUSTAMANTE            P. Valenzuela
                                                 Deputy


IN THE MATTER OF

HOFFMASTER / LUCIER TRUST


                                        JOHN W BLISCHAK
                                        JEFFREY B MESSING



### MINUTE ENTRY

The court has reviewed and considered the pleadings, stipulations, and exhibits. The court hereby presents the procedural history and enters the following findings of fact and conclusions of law.

### PROCEDURAL HISTORY

1.      Petitioner, O.A. "Robert" Madison, filed this action, in his capacity as co-trustee of the Hoffmaster/Lucier Trust on July 18, 2012 seeking to remove Respondent Ken Specht as a co-trustee, terminate Respondent Mark Beck's agency agreement, obtain an immediate accounting, and a surcharge for any misappropriated assets or excess compensation.

2.      The Court held an initial hearing on the Petition on August 6, 2012 at which time Mr. Beck appeared in person with counsel. At that time the Court expressly required that in addition to filing an Answer, Respondents file an "accounting by September 7, 2012." *Minute Entry dated August 7, 2012.*

3.      Respondents did file an Answer on September 7 but did not file an accounting as previously ordered.

4.      Petitioner filed a Motion for Order to Show Cause on September 13, 2012. On September 18, 2012, the Court entered an Order suspending Ken Specht and Mark Beck's authority to act on behalf of the Trust and appointing Mr. Madison as sole Trustee.


EXHIBIT
"A"

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                    02/14/2013


5.     On November 13, 2012, Petitioner filed a Motion for Leave to Amend the Petition. The Amended Petition added the Respondents' spouses as additional Respondents, requested an award for the amount of the money allegedly taken and included a claim of punitive damages. The Court granted the Motion for Leave to Amend by Order dated December 4, 2012, and Respondents' counsel accepted service on December 13, 2012.


6.     Upon conclusion of a settlement conference on December 13, 2012, counsel for Petitioner, counsel for Respondents, Mr. Specht, Mr. Beck and Mr. Madison formally stipulated on the record to the admission of the Exhibits listed in Petitioner's previously filed Amended List of Witnesses and Exhibits. That is, Exhibits 1 through 107 were admitted without objection by stipulation. In addition, the parties stipulated to the admission of their discovery responses and Mr. Specht's deposition transcript. The parties further stipulated that Mr. Beck and Mr. Specht were the only people who had access to the Wells Fargo Accounts and they each had cards for the accounts. The parties also stipulated that this case would be submitted to the Court for decision based upon the stipulations described and the parties would submit simultaneous Trial Briefs and Proposed Findings of Fact and Conclusions of Law on January 18, 2013. *Minute Entry dated December 13, 2012.*


## FINDINGS OF FACT

1.     The Hoffmaster/Lucier Trust was originally established by Virginia B. Hoffmaster and Roland G. Lucier as an intervivos revocable trust on December 4, 1987 (the "Trust"). *Exhibit 76; Amended Petition at ¶ 1; Amended Response at ¶ I.*

2.     The Trust was amended four times before it became irrevocable upon the death of the surviving settlor Virginia B. Hoffmaster on March 4, 2011. *Exhibit 77; Amended Petition at ¶ 2; Amended Response at ¶ I.*

3.     As amended, the Trust named Petitioner, O. A. "Robert" Madison, and Respondent, Ken Specht, as Successor Co-Trustees. *Exhibit 76; Amended Petition at ¶ 3; Amended Response at ¶ I.*

4.     As amended, The Trust names the following individuals and entities as beneficiaries entitled to receive the balance of the Trust estate (remaining after certain specified distributions) in the following percentages shown:

| | |
|---|---|
| Bernice Wileczek | 30% |
| Children's First Academy | 10% |
| Michael Wileczek | 10% |

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                                  02/14/2013

|                          |       |
|--------------------------|-------|
| Tara Capaldi             | 5%    |
| Tracy Register           | 10%   |
| Beatrice Bustillo        | 5%    |
| Diana Luna and           |       |
| Augusto Luna             | 10%   |
| Tempo Herrera            | 10%   |
| O. A. "Robert" Madison   | 5%    |
| Ken Specht               | 5%    |

*Exhibit 77; Amended Petition at ¶ 4; Amended Response at ¶ I.*

     5.     Pursuant to the terms of the Trust as amended, upon the death of the surviving Settlor (Virginia Hoffmaster), the tangible property was to be distributed as directed and then "the remaining principal of the Trust Estate, including any undistributed net income and subsequent additions thereto, shall be distributed" to the individuals and entities identified in the Fourth Amendment as identified in the paragraph above. *Exhibits 76 & 77; Amended Petition at ¶ 11; Amended Response at ¶ I.*

     6.     At the time of Virginia B. Hoffmaster's death, Petitioner O. A. Madison was 85 years old and Ken Specht was 73 years old. *Amended Petition at 12; Amended Response at ¶ I; K. Specht Tr. at 18.*

     At Mr. Specht's suggestion, the co-Trustees agreed to allow Mark Beck to act as their agent. The Agent Agreement provided the following authority to Mr. Beck:

> act in their place and stead, and to do whatever acts are needed to gather and collect all assets at banks, brokerage houses and credit unions; to open bank accounts for the Trust; to pay bills and do whatever else is necessary to administer the Trust; to secure a Federal Tax ID Number; to complete and file personal and fiduciary income tax returns; and to hire an attorney to assist in trust estate administration and making the distributions to the trust beneficiaries.

*Exhibit 78* (Agency Agreement at 1)*; K. Specht Tr. at 28* ("Q. Is it fair to say that you were the one who suggested Mr. Beck be appointed as an agent for purposes of administering the Trust? A. Yes."); *Amended Petition at ¶ 14; Amended Response at ¶ I.*

     7.     Mark Beck was and is married to the ex-wife of Mr. Specht's son who is the mother of Mr. Specht's grandson. Mr. Specht retains close ties to his former daughter-in-law and

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                     02/14/2013

his grandson and, in Mr. Specht's words, has come to think of Mr. Beck as his son-in-law. *K. Specht Tr. at 13-14.*

8.    Mr. Beck and Mr. Specht acted together to consolidate the Trust's assets from various financial institutions at Wells Fargo Advisors, the brokerage house associated with Wells Fargo Bank. *Exhibit 82* (summary), *Exhibits 3-8, 10, 16, 18 &19* (documenting individual transfers).

9.    Mr. Beck and Mr. Specht then wire transferred a total of $1,762,219.70 to an account at Wells Fargo Bank where they had established checking and savings accounts for the Trust. *K. Specht Tr. at 53 and Exhibit 82.*

10.    In addition, Mr. Beck and Mr. Specht deposited an additional $438,575.72 into those accounts for a total of $2,200,795.50. *Exhibit 82* (Wells Fargo Checking Deposits/Transfer from Investments Summary Spreadsheet); *Exhibits 3-37* (Wells Fargo Account Statements).

11.    Over the next 16 months Respondents refused repeated requests from beneficiaries and Mr. Madison for an accounting and distributions. *Exhibits 72, 73, & 74.*

12.    Respondents provided only a partial, incomplete accounting to the beneficiaries, without disclosing it to or seeking approval from Mr. Madison as co-Trustee. *Exhibit 79.*

13.    Respondents demanded that beneficiaries approve the partial, incomplete accounting, provide a release, and agree to pay Respondents 7.5% of their distribution as a condition to making that distribution. *Exhibits 73 &74 & K. Specht Tr. at 50.*

14.    Neither Mr. Beck nor Mr. Specht ever provided an accounting for their time or attempted to justify the basis for any fees. *K. Specht Tr. at 40 & 49.* Nor did they ever discuss or disclose their "calculations" with or to Mr. Madison. *K. Specht Tr. at 51.*

15.    A number of the beneficiaries refused to provide the release Respondents requested and Respondents refused to distribute the balance of the funds due to those beneficiaries. *Exhibits 73 & 74.*

16.    On June 19, 2012, Charles Adams, as counsel for Petitioner, sent Mr. Specht three originals of a Revocation of Agency Agreement formally terminating Mr. Beck's authority to act for the Trust which had been signed by Mr. Madison. Mr. Adams' cover letter asked Mr. Specht to sign the Revocation before a notary and return the originals in the enclosed federal express envelope. The letter cautioned that if Mr. Adams did not receive the "executed Revocation by

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                                02/14/2013

Monday, June 25, 2012, Mr. Madison will proceed to terminate the Agency Agreement through court action." *Exhibit 80*. Mr. Specht refused to sign the Revocation letter. *K. Specht Tr. at 73*.

    17.    Petitioner filed this action on July 18, 2012.

    18.    Despite this Court's express Order, Respondents failed and refused to produce an inventory of the Trust's assets or an accounting. Mr. Beck also failed and refused to respond to Petitioner's discovery requests in their entirety. Mr. Specht did appear for his deposition and responded to some of Petitioner's written discovery requests but his responses were untimely and incomplete. *K. Specht Tr. at 38-39* (purporting to identify all of the money Mr. Specht received from the Trust). Respondents' counsel represented to the Court that Mr. Beck would decline to respond to all discovery requests based on his Fifth Amendment right to be free from self-incrimination.

    19.    As a result of Respondents' refusal to provide an inventory and accounting, Petitioner subpoenaed records from various financial institutions and from the beneficiaries in an effort to discover what Respondents had done with the Trust assets. *Exhibits 36, 37, 64, 65, 67, 106*.

    20.    The Wells Fargo Bank records Petitioner subpoenaed and Respondents own partial records establish that Respondents distributed no more than $1,161,557.60[1] of the $2,200,795.50 in Trust assets they collected in the Wells Fargo Bank accounts to the beneficiaries, including Mr. Specht. *Exhibits 87, 88 & 102*.

    21.    Respondents spent an additional $12,425.53 of the Trust's assets on legitimate administrative expenses, trust and estate tax liabilities, and similar items. *Exhibit 83*.

    22.    Although Respondents have failed and refused to provide information as to what they did with most of that money, the Wells Fargo Bank statements and cancelled checks detail numerous personal purchases totaling approximately $483,490.61. The personal purchases include, but are not limited to, payments to restaurants, grocery stores, drug stores, convenience stores, hotels, nightclubs, bars, rental car agencies, jewelry stores, UCSD Emergency Room, Verizon Wireless, Cox Communications, Fry's Electronics, Best Buy, Apple Store, Ugg, White House/Black Market, Pavillion Dental Group, and National Youth Sports. *Exhibit 90* (Wells

---

[1] Respondents' partial records actually reflect a slightly smaller total distribution of $1,156,097.05. Given the total amount the Court finds Respondents misappropriated, the $5,460.55 discrepancy is not material, but the Court finds Petitioner's recreated accounting which traces the funds from institution to institution, and details Respondents' misappropriations more credible than Respondents' conclusory partial listing of distributions.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                    02/14/2013

Fargo Checking Identified Unauthorized Disbursements); *Exhibits 3–37* (Wells Fargo Account Statements and cancelled checks). Another example of misappropriated funds includes a transaction on October 20, 2011, when a cashier check in the amount of $3,900.00 is issued to BMW North Scottsdale from the trust account. *Exhibit 33.* On the same day, Adrienne Beck, signed a BMW Extended Vehicle Protection document with the contract purchase price of $3,900.00. *Exhibit 86.* There were also hundreds of thousands of dollars in withdrawals at Las Vegas and Lake Tahoe casinos (*e.g.,* Planet Hollywood, Caesar's Hotel, Paris Las Vegas Casino, and the Hard Rock Hotel). *Exhibit 90* (Wells Fargo Checking Identified Unauthorized Disbursements); *Exhibits 3–37* (Wells Fargo Account Statements and cancelled checks).

23.     The Cash Transaction Reports which Wells Fargo Bank was required to file with the United States Treasury Department to document cash transactions of over $10,000.00 establish that Respondents withdrew an additional $313,000.00, in cash, from the Trust's Wells Fargo account. *Exhibit 90* (Wells Fargo Checking Identified Unauthorized Disbursements); *Exhibit 105* (Wells Fargo Cash Transaction Reports).

24.     The remaining $220,288.10 Respondents had control over from the Trust cannot be traced with specificity. The Wells Fargo Bank statements establish that Respondents used branch withdrawals of less than $10,000.00, counter checks, branch transfers, check cards and wire transfers to withdraw the funds; however, despite multiple discovery requests and subpoenas, neither Respondents nor Wells Fargo Bank have provided any documentation or explanation as to where the $220,288.10 went. *Exhibits 3–37.*

25.     Mr. Specht admitted that he and Mr. Beck opened the Wells Fargo Bank accounts without informing Mr. Madison and that Mr. Madison did not have signing authority on the accounts. *K. Specht Tr. at 69-70.* Mr. Specht also admitted that only he and Mr. Beck had debit/check cards for the Trust's accounts and that Mr. Madison did not have access to that account. *K. Specht Tr. at 69-70.* In court on December 13, 2012, the parties formally stipulated to the fact that only Mr. Specht and Mr. Beck had debit/check cards for the Wells Fargo account.

26.     As of July 31, 2012, one week before the initial status conference in this matter, Respondents had reduced the combined Wells Fargo Bank savings and checking account balances from $2,200,795.50 to $52.17. *Exhibit 19.*

27.     Mr. Specht disclosed at his deposition that he paid himself $29,500.00 from the Trust's Wells Fargo Bank account as "compensation" for his alleged efforts on behalf of the Trust during March and April 2011. *K. Specht Tr. at 38-40.* Mr. Specht admitted he never documented those efforts, or discussed his decision to compensate himself with Mr. Madison. *K. Specht Tr. at 39-40; Exhibit 90* (Summarizing Identified Unauthorized Disbursements).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                                    02/14/2013

28.    Mr. Specht also admitted that in October 2011, he and Mr. Beck jointly withdrew $19,500.00 from the Trust's Wells Fargo Bank account and used it to obtain a $19,500.00 cashier's check payable to "HAMRA." Mr. Specht testified he then used that cashier's check to buy himself a watch from HAMRA Jewelers in Scottsdale. *K. Specht Tr. at 76-77.*

29.    Ten months later, in August and September 2012, after this lawsuit was filed and after Petitioner began subpoenaing the bank records, Mr. Specht initially replaced the $19,500. *K. Specht Tr. at 76-77.* Respondents then promptly took the money out of the trust account again leaving the checking account with a negative balance of ($288.62) and the savings account with a balance of $1.15. *Exhibits 20 & 21.*

30.    Mr. Specht described the HAMRA transaction as a "loan," but he admitted that the so-called loan was not documented or revealed to Mr. Madison or the beneficiaries. It was only when he was cross examined about the transaction during his November 15, 2012 deposition that Mr. Specht produced evidence of a partial "repayment." *K. Specht Tr. at 76-80.*

31.    Mr. Specht also admitted during his deposition that he had used his check card to transfer $100,000.00 of his beneficiary distribution to his business account. *K. Specht Tr. at 39, 41-43 & 45.*

32.    During the deposition, Mr. Specht did not disclose that he converted an additional $15,000.00 in cash from the Trust's Wells Fargo Bank account on December 8, 2011. Following the deposition, Petitioner received Wells Fargo's Cash Transaction Reports pursuant to subpoena and those Reports establish that Mark Beck and Ken Specht jointly withdrew $15,000 in cash from the Wells Fargo Trust account on December 8, 2011. *Exhibit 105* (WF000023).

33.    In the Response to Non-Uniform Interrogatories produced on December 3, 2012, Mr. Specht admitted that on August 25, 2011, he also used his check/debit card to withdraw an additional $25,000.00 from the Trust account for what he termed "future compensation." *Exhibit 107* (K. Specht Non Uniform Interrogatory Responses at 2).

34.    Respondents Co-Trustee Ken Specht and Jane Doe Specht (now identified as Emma Specht) are husband and wife and are residents of Florida. The acts and omissions of Ken Specht described herein were performed on behalf of his marital community.

35.    Respondents Mark Beck and Adrianne Beck are husband and wife and are residents of Maricopa County, Arizona. The acts and omissions of Mark Beck described herein were performed on behalf of his marital community.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                    02/14/2013

36.    The Trust has been administered in Maricopa County, Arizona.

## CONCLUSIONS OF LAW

### Jurisdiction

Jurisdiction and venue are proper in this Court. A.R.S. §§ 12-401, 14-10201, 14-10202, 14-10203, and 14-10204.

### Inferences

When a party invokes his Fifth Amendment right against self-incrimination, "the trier of fact is free to infer the truth of the charged misconduct." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 53, 213 P.3d 197, 202 (App. 2009); *Wohlstrom v. Buchanan*, 180 Ariz. 389, 391 n.2 884 P.2d 687, 689 (1994)("[I]n civil cases, fact finders are entitled to draw negative inferences against those who assert Fifth Amendment rights against self-incrimination."); *accord Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause' ") (quoting 8 J. Wigmore, EVIDENCE 439 (McNaughton rev. 1961) (emphasis in the original)); *Montoya v. Superior Court*, 173 Ariz. 129, 131, 840 P.2d 305, 307 (App. 1992) ("the trial judge may draw a negative inference from … invocation of the Fifth Amendment…."). Mr. Beck's refusal to provide an explanation regarding his actions as the agent of the Trust leaves this court with the inference that any testimony he were to provide would not be in his best interest.

When a party refuses to respond to discovery requests and the existence or non-existence of a certain fact is with their peculiar knowledge, "the trier of fact may justly draw the inference that the true fact is against his interest." *American Smelting & Refining v. Wurich*, 92 Ariz. 159, 166, 375 P.2d 364, 368 (1962) (quoting *Starkweather v. Conner*, 44 Ariz. 369, 377, 38 P.2d 311, 314 (1934)); *Healy v. Coury*, 162 Ariz. 349, 355, 783 P.2d 795, 801 (App. 1987). Mr. Beck refused to provide any discovery responses and Mr. Specht has provided only partial and untimely responses despite the fact that it was and is Respondents' burden as "trustees of funds adequately to account for them." *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488,491, 421 P.2d 507, 510 (1966). In spite of the court's order requesting an accounting and discovery requests, neither Mr. Beck nor Mr. Specht offered any evidence to explain where the money went. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 346-47, 972 P.2d 676, 679-80 (1998) (where evidence relative to expenditure is in one party's possession and control, they have burden to justify it). Adverse inferences are therefore appropriate as to both Mr. Specht and Mr. Beck.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                          02/14/2013

Duty/Breach

"On acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interest of the beneficiaries . . . . " A.R.S. § 14-10801. Trustees also have the duty of loyalty and "shall administer the trust solely in the interests of the beneficiaries." A.R.S. § 14-10801(A). In addition, the trustee must act "impartially" as to each beneficiary. A.R.S. § 14-10803. Furthermore, the trust must be administered as a "prudent person would" and the trustee "shall exercise reasonable care, skill and caution." A.R.S. § 14-10804. A trustee may delegate duties to an agent and the agent "owes a duty to the trust to exercise reasonable care to comply with the terms of the delegation." A.R.S. § 14-10807(B). "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." A.R.S. § 14-11001(A).

As a Co-Trustee and as an agent for the Trust, Mr. Specht and Mr. Beck were fiduciaries and owed fiduciary duties to both the Trust and the beneficiaries. Neither Mr. Beck nor Mr. Specht exercised reasonable care in administering the trust. Furthermore, the Respondents did not act "impartially" and did not act in the best interests of the beneficiaries. Mr. Specht and Mr. Beck each had complete access and control over the Wells Fargo Bank accounts (complete with check/debit cards for each of them) and the Court finds it was Mr. Specht and Mr. Beck who took the entire $1,026,812.37 that was not distributed to the beneficiaries or spent on legitimate Trust expenses. Mr. Specht and Mr. Beck breached their duties by acting in concert to convert $1,026,812.37 in Trust assets. Respondents' took that money while they were serving as fiduciaries and their conduct was intentional, knowing, and undertaken with a conscious and deliberate disregard for the Trust and the beneficiaries whose interest they were legally obligated to serve and protect.

Trustees also have a duty to keep the beneficiaries informed. The trustee must keep the "qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." A.R.S. § 14-10813(A). In addition, "a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust." A.R.S. § 14-10813(A). The Respondents did not keep the beneficiaries informed about the administration of the trust and continually refused to provide information to the beneficiaries despite repeated requests. Mr. Beck and Mr. Specht breached their duties by failing and refusing to provide a full inventory and accounting of the Trust's assets in violation of A.R.S. § 14-10813 and this Court's express order.

Unenforceable Release

A.R.S. § 14-11009 provides that a consent, release or ratification is not enforceable if "the beneficiary was induced by improper conduct of the trustee" or "the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach." Respondents required a number of the beneficiaries to sign, as a condition to obtaining a partial distribution, a

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                                02/14/2013

"release." Within the "release" the beneficiaries were asked to sign, Respondents indicated there would be a "7.5% cost for [l]iabilities to the 'Estate.'" In addition, the "release" provided for an additional $200,000 to be "[h]eld for [l]iabilities and [c]osts to the "Estate" that will [e]xceed the 7.5%." The Respondents never detailed these supposed "liabilities" and "costs" and never submitted proper documentation detailing any of their "efforts" in the administration of the trust. The fact that these releases were sent and expected to be signed and returned during the period of time that the Respondents were wrongfully taking money from the Trust, makes any "release" any beneficiary signed unenforceable. Certainly the beneficiaries did not consent to the Respondents taking all the money in the Trust and the beneficiaries did not know their rights or the "material facts relating to the breach" of trust. Therefore, the "consents" signed by some of the beneficiaries are not enforceable.

Remedies/Damages

Respondents Are Not Entitled to Compensation

The remedies for breach of trust include the court reducing or denying compensation to the trustee. A.R.S. § 14-11001(B)(8). A.R.S. § 14-10708 controls a trustee's right to compensation and expressly provides that a trustee is only entitled to "compensation that is reasonable under the circumstances." The Trust itself provides that a Trustee "shall be entitled to receive fair compensation for services rendered." *Exhibit 76* (Third Amendment and Restatement of Trust at ¶ 2.6). "If an agent betrays his principal, such misconduct and breach of duty results in the agent's losing his right to compensation for services to which he would otherwise be entitled." *Haymes v. Rogers,* 70 Ariz. 408, 411, 222 P.2d 789, 790 (1950) (emphasis added). Assuming Respondents were otherwise entitled to receive compensation for their "services", they forfeited that right, as a matter of law, by (a) lying to the beneficiaries, (b) breaching their fiduciary duties and (c) misappropriating over a million dollars from the Trust and the beneficiaries. *See Id.; see also* RESTATEMENT (THIRD) OF AGENCY § 8.01, cmt d(2) ("*Remedies for breach of fiduciary duty – forfeiture of commissions and other compensation . . . .* [a]n agent's breach of fiduciary duty is a basis on which the agent may be required to forfeit commissions and other compensation paid or payable to the agent during the period of the agent's disloyalty.") (emphasis added)).

The Respondents never provided a detailed statement of the services provided and they refused to provide any meaningful account of their efforts. Respondents' breaches of fiduciary duty and misappropriation of Trust assets began on or about March 24, 2011, just twenty days after the death of the surviving settlor, Virginia Hoffmaster, and just six days after Respondent Mark Beck was appointed as an agent for the co-trustees. *Exhibit 3* (Wells Fargo account statement entry dated March 24, 2011 reflecting unaccounted for disbursements from checking account in the form of a counter withdrawal in the amount of $4,855.00); *K. Specht Tr.* at 39-40 (admitting making payments to himself as "compensation" for alleged services to the Trust

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                          02/14/2013

starting in March 2011). The actions they took in regards to the administration of the trust did not
provide a "service" to any of the beneficiaries. The Respondents are not entitled to any offset for
"services" since they were administering the trust for their own benefit rather than for the benefit
of the beneficiaries. The Court rejects Respondents' argument that they are entitled to offset a
portion of the Trust's $1,026,812.37 loss against compensation Respondents' claim they would
have been entitled to receive for "services rendered to the Trust." Respondents are not entitled to
any compensation.

Restoration of the Trust
    "A trustee who commits a breach of trust is liable to the beneficiaries affected for . . .
[t]he amount required to restore the value of the trust property and trust distributions to what they
would have been had the breach not occurred." A.R.S. § 14-11002(A)(1). Remedies for breach
of duty also include the court ordering "any other appropriate relief." A.R.S. § 14-11001(B)(10).
Respondents are required to restore the value of the trust property in the amount of
$1,026,812.37, the amount of money they took from the trust in breach of their fiduciary duties.

Punitive Damages
    Punitive damages may be awarded in cases where the defendant's conduct constitutes
breach of a fiduciary duty. *Rhue v. Dawson*, 173 Ariz. 220, 841 P.2d. 215 (App. 1992); *Jeremy
v. O'Leary*, 145 Ariz. 397, 701 P.2d 1205 (App.1985). "[F]raud and deliberate, overt, dishonest
dealings will suffice to sustain punitive damages." *Rhue*, 173 at 232, 841 P.2d at 227 (citing
*Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 8-9, 699 P.2d 376, 383-384 (App.
1984). The primary consideration in determining the propriety of punitive damages is the
"reprehensibility of conduct and the severity of harm." *Hooper v. Truly Nolan*, Inc., 171 Ariz.
692, 694, 832 P.2d 709, 711 (App. Div. 1, 1992) (citing *Hawkins v. Allstate Ins. Co.*, 152 Ariz.
490, 498, 733 P.2d 1073, 1079 (1987)). "Both can be shown by the duration of the misconduct,
degree of the defendant's awareness of the harm or risk of harm and the defendant's deliberate
continuation of the offending action....[a]ttempts at concealment, defiance of law or prior orders
and failure to remedy also support a punitive award." *Id.*

    Mr. Beck's and Mr. Specht's conduct was reprehensible and their actions completely
depleted the trust. Their complete disregard for the beneficiaries started within days of the death
of the settlor and continued throughout their alleged administration of the trust. Mr. Beck's
emails to some of the beneficiaries is chilling considering he was improperly taking their money
while he was attempting to bully them into signing "Releases." The Respondents used money
that belonged to the beneficiaries for their own personal expenses and pleasure. Given the scope
of Respondents' misconduct, spanning more than 16 months and hundreds of separate
transactions, and the fact that they were fiduciaries who were obligated to protect the interests of
those they took advantage of, an award of punitive damages is appropriate. Simply ordering
Respondents to replace the money they took from the Trust would leave Respondents in the

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                   02/14/2013

same position they were in before they took the money they were obligated to protect and distribute. Such a result would do nothing to punish Respondents or deter others from engaging in similar misconduct in the future. An award equal to the amount the Respondents took, $1,026,812.37, in punitive damages is appropriate and hereby ordered.

Joint and Several Liability
"[A] party is responsible for the fault of another person, or for payments of the proportionate share of another person, if any of the following applies: (1) Both the party and the other person were acting in concert . . . . (2) The other person was acting as agent or servant of the party." A.R.S. § 12-2506(D). Mr. Specht and Mr. Beck were acting in concert to take over a million dollars from the trust and Mr. Beck was acting as agent; thus, the Respondents are jointly and severally liable for the entire amount of the funds wrongfully taken from the trust, $1,026,812.37, plus $1,026,812.37 in punitive damages.

Attorney Fees and Costs
"A court . . . may order that a party's reasonable fees, expenses and disbursements . . . be paid by any other party . . . that is the subject of the judicial proceedings." A.R.S. §14-11004(B). "The successful party . . . shall recover from his adversary all costs expended or incurred . . . ." A.R.S. §12-341. Petitioner is entitled to recover his reasonable attorneys' fees expended on behalf of the Trust pursuant to A.R.S. § 14-11004(B) and taxable costs pursuant to A.R.S. § 12-341 from Respondents.

For all of the foregoing reasons,

IT IS ORDERED granting the Petition for Surcharge and directing repayment of the money took in the amount of $1,026,812.37.

IT IS FURTHER ORDERED granting Punitive Damages in the amount of $1,026,812.37.

IT IS FURTHER ORDERED granting Petitioner attorney fees.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

PB 2012-001618                                                02/14/2013

IT IS FURTHER ORDERED directing Petitioner's counsel to submit a proposed form of Judgment along with an Application for Attorneys' Fees and Statement of Taxable Costs.

DATED this 14th day of February, 2013.


/ s / LORI HORN BUSTAMANTE
_____
JUDICIAL OFFICER OF THE SUPERIOR COURT

All parties representing themselves must keep the court updated with address changes. A form may be downloaded at: http://www.superiorcourt.maricopa.gov/SuperiorCourt/Self-ServiceCenter.

X-Tra

03/15/13

13-12786CA11

FILED

MAR 15 2013   1:52 pm

MICHAEL K. JEANES, Clerk
By P. Valenzuela
Deputy

Jeffrey Messing, #009768
messing@poliball.com
Kesha A. Hodge, #021824
hodge@poliball.com
Poli & Ball, P.L.C.
2999 North 44th Street, Suite 500
Phoenix, Arizona 85018
(602) 840-1400

Charles A. Adams, #004162
charlesadams@qwestoffice.net
Charles A. Adams, P.C.
19082 R.H. Johnson Blvd., Suite B
Sun City West, Arizona 85375
Phone:       (623) 214-9881
Fax:   (623-214-6695

*Co-Counsel for Petitioner*

## ARIZONA SUPERIOR COURT

## MARICOPA COUNTY

In the Matter of the

HOFFMASTER/LUCIER TRUST,

No. PB2012-001618

**AMENDED FINAL JUDGMENT**

2013 APR 10 AM 11:09
FILED FOR RECORD
CLERK
CAROLL & COUNTY COURTS
MARICOPA COUNTY, FLORIDA
CIVIL #3

This matter having been submitted to the Court for decision based upon stipulated exhibits, discovery responses, the deposition testimony of Ken Specht, and briefing from the parties, and the Court having entered Findings of Fact and Conclusions of Law:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Petitioner, O.A. "Robert" Madison as Trustee of the *Hoffmaster/Lucier Trust* has judgment against Respondents Ken Specht, Camille Specht, Mark Beck and Adrianne Beck as follows:



EXHIBIT
"B"

BOOK 28578 PAGE 4369
LAST PAGE

.13-12786CA11

1.  Granting the Petition for Surcharge and directing Respondents to repay the money they took from the Hoffmaster/Lucier Trust in the amount of $1,026,812.37 as compensatory damages;

2.  Awarding Petitioner $1,026,812.37 in punitive damages;

3.  Awarding Petitioner his attorneys' fees in the amount of $65,850.00.

4.  Awarding Petitioner his taxable costs in the amount of $3,975.87;

5.  Awarding Petitioner prejudgment and post-judgment interest at the legal rate of prime plus one percent (currently 4.25%).

DATED _____3/14/13_____

_____
HONORABLE LORI HORN BUSTAMANTE
SUPERIOR COURT COMMISSIONER

FIOL & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

The foregoing instrument is a full, true and correct copy of the original on file in this office.

Attest ____March 21____, 20_13_
MICHAEL K. JEANES, Clerk of the Superior Court of the State of Arizona, in and for the County of Maricopa.

By _____ Deputy

2

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | |
|---|---|---|
| ☒ **CIVIL** | **NOTICE OF RECORDING** | |
| | **OF** | |
| ☐ **OTHER** | **FOREIGN JUDGMENT** | |

**CASE NUMBER:** 13-12786-CA-11

| **JUDGMENT CREDITOR(S)** | **VS. JUDGMENT DEBTOR(S)** |
|---|---|
| HOFFMASTER/LUCIER TRUST | KEN (KENNEY) SPECHT |
| | Address: 14 N.E. 1ST AVENUE |
| | MIAMI, FL 33132 |

| **VS. JUDGMENT DEBTOR(S)** | **VS. JUDGMENT DEBTOR(S)** | |
|---|---|---|
| CAMILLE SPECHT | | |
| Address: 14 N.E. 1ST AVENUE | Address: | |
| MIAMI, FL 33132 | | **CLOCK IN** |

| **VS. JUDGMENT DEBTOR(S)** | **VS. JUDGMENT DEBTOR(S)** |
|---|---|
| Address: | Address: |

Pursuant to Section 55.505, Florida Statutes (Florida Enforcement of Foreign Judgments Act), you are hereby notified that a Foreign Judgment has been recorded against you by:

| HOFFMASTER/LUCIER TRUST | ARAN CORREA GUARCH & SHAPIRO, P.A. |
|---|---|
| Judgment Creditor(s) | Attorney(s) for Judgment Creditor(s) |
| 12403 BANYAN DRIVE | ANTHONY TORRENTE, ESQ. |
| SUN CITY WEST, ARIZONA 85375 | 255 UNIVERSITY DRIVE |
| | CORAL GABLES, FL 33134 |
| Address | Address |

As evidenced by the attached copies of the Recorded Foreign Judgment and Affidavit: I hereby certify that a true copy of this notice together with a copy of the Foreign Judgment and Affidavit have been furnished by registered mail, return receipt requested to the above Judgment Debtor(s) at the above address this _____ day of _____, 20 _____.

| **HARVEY RUVIN** | BY: | APR 3 0 2013 |
|---|---|---|
| **CLERK OF COURTS** | DEPUTY CLERK | DATE |

Section 55.509 of the Florida Enforcement of Foreign Judgment Act provides as follows:
"STAY OF ENFORCEMENT OF FOREIGN JUDGMENT"

(1) If, within 30 days after the date the Foreign Judgment is recorded, the Judgment Debtor files an action contesting the jurisdiction of the Court which entered the Foreign Judgment or the validity of the Foreign Judgment and records a Lis Pendens directed toward the Foreign Judgment, the Court shall stay enforcement of the Foreign Judgment and the Judgment lien upon the filing of the action by the Judgment Debtor.
(2) If the Judgment Debtor shows the Circuit or County Court any ground upon which enforcement of a Judgment of any Circuit or County Court of this state would be stayed, the Court shall stay enforcement of the Foreign Judgment for an appropriate period, upon requiring the same security for satisfaction of the Judgment which is required in this state.

CLK/CT 486 REV. 7/02


**EXHIBIT**
"C"

Clerk's web address: www.miami-dadeclerk.com

13-12786 CA 11

FILED

MAR 15 2013    1:52 pm

MICHAEL K. JEANES, Clerk
By _____ Deputy

1    Jeffrey Messing, #009768
     messing@poliball.com
2    Kesha A. Hodge, #021824
     hodge@poliball.com
3    Poli & Ball, P.L.C.
     2999 North 44th Street, Suite 500
4    Phoenix, Arizona 85018
     (602) 840-1400
5
6    Charles A. Adams, #004162
     charlesadams@qwestoffice.net
7    Charles A. Adams, P.C.
     19082 R.H. Johnson Blvd., Suite B
8    Sun City West, Arizona 85375
     Phone:    (623) 214-9881
9    Fax:    (623-214-6695

10   Co-Counsel for *Petitioner*

11              ARIZONA SUPERIOR COURT

12                 MARICOPA COUNTY

13
                                          No. PB2012-001618
14   In the Matter of the

15                                        AMENDED FINAL JUDGMENT
     HOFFMASTER/LUCIER TRUST,
16

17

18

19          This matter having been submitted to the Court for decision based upon

20   stipulated exhibits, discovery responses, the deposition testimony of Ken Specht, and

21   briefing from the parties, and the Court having entered Findings of Fact and

22   Conclusions of Law;

23          **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Petitioner,

24   O.A. "Robert" Madison as Trustee of the Hoffmaster/Lucier Trust has judgment against

25   Respondents Ken Specht, Camille Specht, Mark Beck and Adrianne Beck as follows:

26

2013 APR 10 AM 11:09
FILED FOR RECORD

CLERK CIRCUIT & COUNTY COURTS
MIAMI-DADE COUNTY, FLA.
CIVIL #3

.13-127 86 CA 1 1

1.     Granting the Petition for Surcharge and directing Respondents to repay the money they took from the Hoffmaster/Lucier Trust in the amount of $1,026,812.37 as compensatory damages;

2.     Awarding Petitioner $1,026,812.37 in punitive damages;

3.     Awarding Petitioner his attorneys' fees in the amount of $65,850.00.

4.     Awarding Petitioner his taxable costs in the amount of $3,975.87;

5.     Awarding Petitioner prejudgment and post-judgment interest at the legal rate of prime plus one percent (currently 4.25%).

DATED _____3/14/13_____

HONORABLE LORI HORN BUSTAMANTE
SUPERIOR COURT COMMISSIONER

The foregoing instrument is a full, true and correct copy of the original on file in this office.

Attest _____March 21_____ 20 _13_
MICHAEL K. JEANES, Clerk of the Superior Court of the State of Arizona in and for the County of Maricopa.

By _____ Deputy

2

CFN 2013R0285785 OR BK 28578 Pgs 4370 - 4371 (2pgs)
RECORDED 04/12/2013 09:52:28
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.:

HOFFMASTER/LUCIER TRUST,

     Plaintiff,

v.

KENNEY SPECHT, and
CAMILLE SPECHT,

     Defendant.

13-12786 CA 11

## AFFIDAVIT PURSUANT TO FLORIDA STATUTE § 55.505(1)

BEFORE ME, the undersigned authority, personally appeared Anthony Torrente who, after being duly sworn deposes and states that:

1. Affiant is the attorney/agent of O.A. "Robert" Madison as Trustee of the Hoffmaster/Lucier Trust and, as such, makes this affidavit based on personal knowledge.

2. On March 15 2013, an amended judgment was entered in favor of O.A. "Robert" Madison as Trustee of the Hoffmaster/Lucier Trust  and against Ken (Kenny) Specht and Camille Specht, among others, in accordance with the laws of the State Arizona.

3. The name and last known post office address of the judgment debtors is:

Ken (Kenny) Specht
Camille Specht
14 N.E. 1st Avenue
Miami, Florida 33132
SS# XXX-XX-4111

4. The name and address of the judgment creditor is:

Hoffmaster/Lucier Trust
12403 Banyan Drive
Sun City West, Arizona  85375



BO ( 28578 PAGE 4371
LAST PAGE

5.  The name and address of the judgment creditor's attorney in the State of Florida

is:

13-12786 CA 11

ARÁN CORREA GUARCH & SHAPIRO, P.A.
Attn: Anthony Torrente, Esquire
255 University Drive
Coral Gables, Florida 33134
Fla. Bar No: 093644

FURTHER AFFIANT SAYETH NAUGHT.

AFFIANT: ANTHONY TORRENTE, ESQUIRE

Sworn to and subscribed to before me this _8_ day of _April_, 2013, by
_____, who is personally known to me.

INDIRA PADILLA
Notary Public - State of Florida
My Comm. Expires Sep 19, 2015
Commission # EE 100532
Bonded Through National Notary Assn.

NOTARY PUBLIC